Department of Safety
No. 90-125

## APPEAL OF GARY M. TOCZKO
### (New Hampshire Department of Safety)

Merrimack
No. 90-251

## LYNN B. ANNICCHIARICO & a.

v.

## THE STATE OF NEW HAMPSHIRE

December 18, 1992

482

*Bianco Professional Association,* of Concord (*James J. Bianco, Jr.,* and *Michael J. Farley* on the brief), and *McLane, Graf, Raulerson & Middleton,* of Concord (*Gregory H. Smith* and *Arthur G. Greene* on the brief, and *Mr. Greene* orally), for Gary M. Toczko and Lynn Annicchiarico *& a.*

*John P. Arnold,* attorney general (*Robert E. Dunn, Jr.,* assistant attorney general, on the brief and orally), for the State.

*Frank H. Gordon,* of New London, by brief for the New Hampshire Lakes Legislative Coalition, as *amicus curiae.*

HORTON, J. These appeals have been consolidated for briefing and argument before this court. Each concerns regulations promulgated by the commissioner of the department of safety under the ski craft act, RSA 270:73 to :74-b (Supp. 1991), and decisions issued un-

der those regulations. The ski craft act regulates the operation of watercraft such as "jet skis" or "surf skis" (hereinafter referred to as "ski craft"), and authorizes the commissioner to promulgate procedural rules for conducting public hearings on whether to prohibit or restrict the use of ski craft on the State's ponds, lakes and rivers. *Id.* With respect to *Annicchiarico v. State*, a petition for declaratory judgment challenging procedural rules promulgated pursuant to the ski craft act, we affirm the decision of the Superior Court (*Manias*, J.), upholding the validity of these rules. With respect to *Appeal of Toczko*, appealing decisions of the commissioner prohibiting or restricting the use of ski craft on fourteen lakes or ponds, we affirm the decisions of the commissioner.

Lynn Annicchiarico, along with the New Hampshire Personal Watercraft Association, Hooksett Kawasaki, Inc., and four other plaintiffs, brought a petition in superior court seeking a declaratory judgment, injunctive relief, and other equitable relief against procedures enacted by the commissioner, pursuant to the ski craft act, governing ski craft hearings. *See* N.H. ADMIN. RULES Saf-C 411. They alleged that the procedures violated provisions of both the State Administrative Procedure Act (APA), RSA chapter 541-A (Supp. 1991), and the ski craft act by not providing for adjudicative hearings and by depriving the appellants of an opportunity for a fair hearing. The superior court rejected the petition, as well as subsequent motions for reconsideration and for a new hearing. This appeal followed.

The *Appeal of Toczko* represents a consolidated appeal from decisions by the commissioner banning or restricting the use of ski craft on fourteen lakes and ponds in New Hampshire. In each case, the appropriate motions were filed to bring the decisions directly to our attention by way of administrative review. RSA 270:74-a, VI (Supp. 1991); RSA 541:6. In his appeal, Toczko asserts that the department violated the ski craft act by failing to make specific findings regarding the seven factors listed in the statute as governing the grant or denial of petitions to prohibit or restrict the use of ski craft on New Hampshire's lakes or ponds. *See* RSA 270:74-a, III(a)–(g) (Supp. 1991). In addition, Toczko contends that each decision was against the weight of the evidence and unsupported by the facts.

After the legislature enacted the ski craft act, the commissioner promulgated emergency procedural rules and conducted thirty-one hearings pursuant to these rules. These rules and decisions are not at issue. On October 5, 1989, the commissioner filed a final permanent rules proposal with the office of legislative services. Although

the joint legislative committee on administrative rules voted to object to these final rules, they were subsequently promulgated by the commissioner. On November 17, 1989, the joint legislative committee officially issued a final objection to the rules, contending that they were contrary to the legislative intent and inconsistent with the APA. *See* RSA 541-A:3-e, V(c) (Supp. 1991).

Under the APA, the joint legislative committee's formal objection to the final rules shifts to the commissioner the burden of demonstrating that the rules are "within the authority delegated to the agency, [are] consistent with the intent of the legislature, and [are] in the public interest." RSA 541-A:3-e, VI (Supp. 1991).

■ As a preliminary matter, the State argues that the petitioners' failure to raise in their pleadings the issues of the delegated authority or the public interest forecloses these issues from the declaratory judgment. This argument ignores the impact of the APA, which shifts to the commissioner the burden of proving that the rules are within the agency's delegated authority, consistent with the legislature's intent, and in the public interest. *See id.* Because the petitioners pled the fact that the joint legislative committee objected to the proposed rules, the commissioner must now allege and establish these three issues as a rebuttal. The petitioners carry no burden of pleading issues which might be raised by the agency as a defense. We turn now to the merits.

■ The first element the commissioner was required to prove is that the rules are within the authority delegated to the agency. *See id.* Under the ski craft act, the commissioner was authorized to "establish[] procedures for the public hearing process." RSA 270:74-a, I (Supp. 1991). Thus, the authority to establish rules for conducting public hearings on whether to prohibit or restrict the operation of ski craft on the State's rivers, lakes, and ponds is directly within the authority delegated to the commissioner.

■ The issue of what form ski craft hearings must take falls under the second prong of the three-part APA test, namely whether the rules are consistent with the legislature's intent. *See* RSA 541-A:3-e, VI (Supp. 1991). This is the primary contention that the appellants bring forward. The superior court found ambiguous language in the ski craft act requiring the commissioner to "adopt rules pursuant to [the APA] establishing procedures for the public hearing process contained in this section." RSA 270:74-a, I (Supp. 1991). The superior court noted that this language could be interpreted as requiring

either that the substance of the rules conform with the APA, or that the method of adopting the rules conform with the APA. We need not rule on this aspect of the legislation. Absent a clear showing of a legislative intent to the contrary, the substantive provisions of the APA still apply to the ski craft act. *See* RSA 541-A:9, :10 (Supp. 1991). Therefore, we must consider whether the APA requires adjudicatory proceedings, and if not, whether the ski craft act mandates this format.

The appellants in *Annicchiarico* claim that ski craft hearings constitute "contested case[s]" within the meaning of the APA, which provides as follows:

> "An agency shall commence an *adjudicative* proceeding if a matter has reached a stage at which it is considered a contested case or, if the matter is one for which a provision of law requires a hearing only upon the request of a party, upon the request of a party."

RSA 541-A:16, I (Supp. 1991) (emphasis added). We disagree. The APA defines "contested case" as "a proceeding in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." RSA 541-A:1, III (Supp. 1991). Not all agency actions that affect legal rights, duties, or privileges are contested cases. Legislative-style rulemaking decisions or declaratory rulings, while affecting legal rights, duties, or privileges, are not required by law to be determined by adjudication.

In addition, ski craft hearings affect the public generally rather than a particular "party." *See id.* New Hampshire courts have distinguished cases affecting private rights, which require adjudicative hearings, from those affecting public rights, which require only legislative hearings. *See Petition of Boston & Maine Corp.*, 109 N.H. 324, 327, 251 A.2d 332, 335–36 (1969). The appellants in *Annicchiarico* will suffer no harm to their legal rights, duties, or privileges different from that suffered by the general public. While the appellants claim that ski craft hearings are directed toward "a specific, identifiable segment of the general public" that uses ponds or lakes, leaving unaffected the rights of other members of the general public, this argument simply is not true. The commissioner's decisions do not single out the appellants by their terms. Moreover, the decisions cannot be deemed as facially affecting all persons, while having an adverse impact on a limited, identifiable group. *See* 2 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 7.2, at 8 (2d ed. 1978). Those barred

from using a particular pond or lake might range from land owners to occasional visitors. As such, this class must be considered fluid, and not limited or discernible enough to require adjudication. *See id.* Ski craft hearings do not fall within the category of "contested case[s]" that, under the APA, must be resolved by adjudicative hearings.

■ We also reject the *Annicchiarico* appellants' claim that the APA's alternative condition, that a hearing must be commenced upon the request of a party, applies in this case. It is true that under the ski craft act, where "[a]ny group of 10 or more residents or property owners of a town in which a lake, pond, or river is located . . . petition the commissioner to prohibit or restrict the use of ski craft," the commissioner must "hold a public hearing to determine whether to grant a petition . . . ." RSA 270:74-a, II & III (Supp. 1991). A petitioner under this provision of the ski craft act, however, is not a "party," and the petition is not a request for a hearing. *See* RSA 541-A:1, X (Supp. 1991). A "party" must be either named, admitted, or entitled as a right to be admitted in the proceedings. *Id.* Petitioners under the ski craft act can claim none of these interests. A petition requesting the closing or restriction of a pond, lake, or river sets into motion, by operation of law, the wheels of these "public hearings." Thereafter, however, the petitioners have no interest, different from the general public, entitling them to be admitted to the proceedings in a role other than as witnesses at the hearing. Although the party listed first on a petition must act as agent for the group in advance of the hearing, *see* N.H. ADMIN. RULES, Saf-C 411.01(b), this added responsibility in no way implicates duties, or grants rights, in the hearing process. Therefore, we conclude that the act of petitioning for a hearing pursuant to the ski craft act does not trigger an adjudicatory-style hearing.

■ Aside from the APA, we can find nothing in the ski craft act itself, or in its legislative history, which invokes formal adjudication. The act's legislative history indicates that the legislature had been restricting certain activities on lakes and ponds by statute, but had become overrun by specific requests for such legislation. In an effort to relieve the legislature of this time-consuming responsibility, these legislative decisions were delegated to the commissioner. The genesis of these hearings is from the legislative model, and we find nothing to indicate that the hearings' essence has changed from that model.

The final element that the commissioner was required to establish under the APA three-part test is that the regulations are in the public interest. *See* RSA 541-A:3-e, VI (Supp. 1991). The superior court found that the rules are in the public interest since they permit testimony to be heard from as many people as possible, expedite the hearing process, and obviate the need for counsel because they provide for procedures that are less complex than those utilized in adjudicative hearings. While appellants suggest several variants to the hearing process, and suggest that hearings conducted under oath and without cross-examination are unreliable, these contentions do not lead to the conclusion that the court's finding regarding public interest is erroneous.

We turn next to the *Toczko* appeal, which challenges the commissioner's decisions restricting or prohibiting the use of ski craft on fourteen lakes and ponds. In his brief, Toczko challenges as inadequate the procedures adopted under the ski craft act for providing public notice of the ski craft hearings. The petitioner, however, did not address this issue in his notice of appeal. New Hampshire Supreme Court Rule 16 requires that questions presented in a party's brief "shall be the same as the question previously set forth in the appeal document." SUP. CT. R. 16(3)(b); *see also State v. Peterson*, 135 N.H. 713, 714, 609 A.2d 749, 750 (1992). Since Toczko has neither moved for nor received leave of this court to argue this question, we will not consider the question on its merits. *See Peterson*, 135 N.H. at 715, 609 A.2d at 751.

Toczko further claims that in rendering each of the decisions at issue, the commissioner failed to comply with RSA 270:74-a, III (Supp. 1991). The statute provides that when evaluating a petition to prohibit or restrict the use of ski craft, the commissioner shall take into consideration the following factors:

"(a) The impact of ski craft on the environment, the shoreline and wildlife.

(b) The surface area of the lake, pond, or river being considered.

(c) The use or uses which have been established on the lake, pond, or river.

(d) The depth of the water.

(e) The amount of water-borne traffic.

(f) The necessity of ensuring access to and use of the lake, pond, or river for all individuals and the right of those individuals to appropriate use of the public waters.

(g) Whether a determination is necessary to ensure the safety of persons and property."

RSA 270:74-a, III(a)–(g) (Supp. 1991). Procedures issued pursuant to the ski craft act likewise provide that any decision by the commissioner "shall be in writing and shall include findings of fact and rulings of law based upon" the seven criteria. *See* N.H. ADMIN. RULES Saf-C 411.05(b).

■ Toczko reads the ski craft act as requiring separate findings of fact as to each of the seven statutory criteria. We do not agree. The plain language of the ski craft act simply requires the commissioner to consider the seven criteria when determining whether to restrict or prohibit the use of ski craft, and to provide a written record of his findings. It does not call for a fact-finding patterned after the statutory criteria. In the present case, each decision contained a written finding of fact setting forth with particularity the commissioner's justifications for restricting or prohibiting the use of ski craft. These factual findings reflected a reliance on the statutory criteria. Indeed, in twelve decisions, the commissioner specifically noted that the "criteria prescribed by RSA 270:74-a, III were considered." Therefore, we reject Toczko's claim that the commissioner failed to follow procedures established under the act when issuing the decisions at issue in this case.

Toczko next claims that the commissioner's decisions were both unsupported by, and contrary to, the evidence presented during the ski craft hearings. This substantive challenge to the commissioner's decisions is controlled by RSA 541:13 which provides as follows:

"[T]he burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful . . . and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

■ Administrative findings of fact are deemed to be prima facie lawful and reasonable. *Appeal of Maddox a/k/a Cookish,* 133 N.H. 180, 184, 575 A.2d 1, 4 (1990). This court is "not free to substitute its judgment on the wisdom of [an administrative decision]" for that of the agency making the decision. *Appeal of Concord Natural Gas Corp.,* 121 N.H. 685, 692, 433 A.2d 1291, 1296 (1981). We recognize that decisions issued under the ski craft act are subject to re-

view under RSA chapter 541. The commissioner therefore is "'under an obligation to set forth [his or her] methodology and findings fully and accurately'" in order to allow for a meaningful judicial review of the decision. *N.H.-Vt. Health Serv. v. Comm'n of Ins.*, 122 N.H. 268, 273, 444 A.2d 508, 510 (1982) (quoting *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 341, 402 A.2d 626, 632 (1979)). Nonetheless, in the absence of an erroneous ruling of law, an agency's decision will be upheld unless this court finds, by a preponderance of the evidence, that the decision is unjust or unreasonable. *See Appeal of Peirce*, 122 N.H. 762, 765, 451 A.2d 363, 365 (1982); RSA 541:13.

In this case, we do not find that the commissioner's decisions were unjust or unreasonable, or so barren of specific findings of fact as to prohibit a meaningful review. As noted, with each order restricting or prohibiting the use of ski craft, the commissioner issued written findings explaining the evidence relied on in making the decisions. This evidence correlated with the factors set forth in RSA 270:74-a, III(a)–(g). It included the presence of children's camps on the lakes and ponds; use of the areas as habitat by loons, waterfowl, eagles, and other wildlife; dangerously low water levels; available public access to the lakes and ponds; the existing water uses such as swimming, fishing, and sailing; and the presence of private residences that would be vulnerable to the increased noise and water traffic caused by ski craft. In addition, in each decision, the commissioner took specific note of any opposition voiced to proposed restrictions on the use of ski craft. In keeping with our duty to accord due respect to the factual findings of an administrative agency, we affirm the commissioner's decisions restricting the use of ski craft on the lakes and ponds at issue here.

We conclude that the superior court was correct in finding that the commissioner had sustained his burden under RSA 541-A:3-e, VI (Supp. 1991), and the decisions appealed, issued after hearings conducted under these regulations, are affirmed.

*No. 90-125 affirmed;*
*No. 90-251 affirmed.*

All concurred.