Original
Nos. 99-192
　　99-193

PETITION OF SUPPORT ENFORCEMENT OFFICERS I AND II
AND
PETITION OF INTERSTATE CASE TECHNICIANS

(New Hampshire Personnel Appeals Board)

September 25, 2001

*Michael C. Reynolds*, general counsel, State Employees' Association of New Hampshire, Inc., of Concord, by brief and orally, for the petitioners.

*Philip T. McLaughlin*, attorney general (*Andrew B. Livernois*, attorney, on the brief and orally), for the State.

BROCK, C.J. These appeals were consolidated for briefing and argument before this court. The petitioners are a group of support enforcement officers (SEOs) and a group of interstate case technicians (ICTs) employed

by the New Hampshire Department of Health and Human Services (HHS). In these petitions for writs of certiorari, both groups challenge the director of the division of personnel's (director) denial of requests for upgrades in their respective job classifications. They contend that reclassification appeals are governed by the provisions of RSA 541-A:31-:36 (1997) (amended 1999 & 2000) and that the reclassification proceedings failed to comply with those provisions. We vacate and remand.

The director is responsible for dividing all positions in the State classified service into separate and distinct classes so that each classification contains those positions which involve similar duties and responsibilities. RSA 21-I:42, II (2000). The classification system is designed, in part, to ensure that the "same qualifications [are] required for, and the same schedule of pay [is] equitably applied to, all positions in the same classification." *Id.*

An employee or department head affected by the allocation of a position in the classification plan may file a request for reallocation or reclassification of a position along with supporting documentation with the director. RSA 21-I:57 (2000); N.H. ADMIN. RULES, Per 303.02 (1992). The director reviews the request and responds in writing, stating whether or not the director agrees with the recommendation made in the request. N.H. ADMIN. RULES, Per 303.04 (1992). If the director denies the request, the party may appeal to the personnel appeals board (board) pursuant to RSA 21-I:57.

The petitioners submitted a letter to the director requesting that their positions be reclassified because their jobs had increased in complexity and responsibility. In support of their request, the petitioners identified a number of classification factors and argued that the point values for many of the categories should be increased. The director examined the materials submitted by the petitioners and denied their request in March 1997. When the director reaffirmed her position in response to a motion for reconsideration, the petitioners appealed to the board.

In separate letters dated May 23, 1997, the petitioners made a number of factual assertions supporting their arguments that upgrades were appropriate, and requested full evidentiary hearings. Thereafter, the petitioners submitted additional written materials to support their requests, including a lengthy brief, selections from the division of personnel's Classification Manual and copies of the ICTs' and SEOs' supplemental job descriptions. In September 1997, the petitioners again requested that the board schedule evidentiary hearings.

The board denied the petitioners' requests for evidentiary hearings and scheduled the appeals for hearings at which each side would be given thirty minutes to present offers of proof and legal argument. The

petitioners objected, arguing that a number of material factual issues were in dispute. Over the petitioners' objection, the board went forward with the offer of proof proceedings. In March 1999, the board issued a written decision denying the petitioners' upgrade requests.

The board reviewed the evidence presented by the parties and compared the duties and responsibilities described by the petitioning SEOs to the current class specifications for SEOs. The board found the evidence insufficient to support a finding that the SEOs' duties and responsibilities exceeded the level at which they had been evaluated and denied their request for reclassification from SEO I, salary grade 17 and SEO II, salary grade 20, to a proposed single classification of Support Enforcement Officer, salary grade 20.

. The board next reviewed the evidence presented to support the ICTs' argument that the division of personnel should reclassify ICT positions ranging from salary grade 11 through salary grade 15 to a new classification of Support Enforcement Technician, salary grade 17. The board concluded that the duties the petitioners described did not warrant the creation of a new classification of Support Enforcement Technician or reallocation to a new salary grade.

These appeals are by petitions for writs of certiorari. "The test to determine whether to grant a writ of certiorari is whether the agency has acted illegally in respect to jurisdiction, authority or observance of the law ... or has abused its discretion or acted arbitrarily, unreasonably or capriciously." *Wilson v. State Personnel Comm'n*, 118 N.H. 424, 425-26 (1978) (quotation omitted).

The petitioners argue that the board erred as a matter of law when it denied their request for an evidentiary hearing, and that the board's findings and rulings were inadequate as a matter of law under RSA 541-A:35. According to the petitioners, the board was subject to the sections of the Administrative Procedure Act, RSA ch. 541-A, applicable to adjudicatory proceedings. Therefore, they had the right to present and examine evidence and receive a full and fair hearing pursuant to RSA 541-A:31-:36.

The petitioners' claim is founded upon the interpretation of two statutes, RSA 21-I:57 and RSA chapter 541-A, the Administrative Procedure Act (APA). Where possible, we construe statutes "according to their plain meanings, and in the context of the statutory schemes of which they are a part." *Appeal of Higgins-Brodersen*, 133 N.H. 576, 579 (1990) (citation omitted).

■ RSA 541-A:41 (1997), enacted after RSA 21-I:57, states that the APA "shall govern all agency rulemaking procedures, hearings, and

appeals, except as specifically exempted by this chapter. Conflicts between this chapter and prior or existing statutes shall be resolved by following the stricter requirements." RSA 21-I:57, the statutory provision at issue in this appeal, is not on the APA's list of exempted statutes. *See* RSA 541-A:21 (Supp. 2000). Therefore, the APA applies to classification appeals, and we must look to the APA to determine whether it required live witness testimony in this case, and whether the board's decision complied with the APA.

■ The APA provides that the adjudicative proceeding requirements of RSA 541-A:31-:36 apply in "contested cases." RSA 541-A:1, I, :31 (Supp. 2000). A "contested case" is "a proceeding in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after notice and an opportunity for hearing." RSA 541-A:1, IV (Supp. 2000). Thus, in order to determine whether the requirements of RSA 541-A:31-:36 apply, we must determine whether an agency hearing is "required by law." Although we have never addressed the issue, we agree with the courts which have interpreted the same language and have held that "there are three ways that a hearing can be 'required by law': (1) a statutory requirement, (2) an agency rule requirement, or (3) a due process constitutional requirement." *Carlson v. Hudson*, 277 N.W. 2d 715, 718 (S.D. 1979); *see also Donnelly Assoc. v. D.C. Historic Preservation*, 520 A.2d 270 (D.C. Ct. App. 1987); *Bush v. Hawaiian Homes Com'n*, 870 P.2d 1272, 1278-80 (Haw. 1994); *Carlson v. Bratton*, 681 P.2d 1333 (Wyo. 1984). We now consider whether a hearing in this case was "required by law."

■ An employee or department head may appeal a classification decision pursuant to RSA 21-I:57, which provides, in pertinent part:

> The employee or department head, or both, shall have the right to appeal the director's decision to the personnel appeals board in accordance with rules adopted by the board under RSA 541-A. If the board determines that an individual is not properly classified in accordance with the classification plan or the director's rules, it shall issue an order requiring the director to make a correction.

RSA 21-I:57 (2000). Nothing in the plain language of the statute mandates a hearing in classification appeals. Had the legislature intended to require a hearing, it would have so stated, or it would have mandated, as it did in

RSA 21-I:58, that "[t]he appeal shall be heard in accordance with the procedures provided for adjudicative proceedings in RSA 541-A."

■ Our inquiry does not, however, end there. RSA 21-I:57 provides that classification appeals will be heard "in accordance with rules adopted by the [personnel appeals] board." Exercising this authority, the board promulgated rules to govern classification appeals. *See* N.H. ADMIN. RULES, Per-A 208 (1986). The rules provide a procedure that allows both parties to submit documentation and written argument in support of their positions. *See* N.H. ADMIN. RULES, Per-A 208 (1986). The rules also provide for a hearing limited to ten minutes of oral argument for each party. N.H. ADMIN. RULES, Per-A 208.05 (1986) (amended 1988). Given the fact that the board applied these procedural rules to the petitioners' appeals, we conclude that the petitioners were "legally entitled to a hearing," and that their cases were "contested cases" within the meaning of the APA.

■ The State argues that the petitioners' appeal is, nevertheless, not a "contested case" because not every agency action, even if it affects some person's legal rights and duties, constitutes a contested case. Citing *Appeal of Tozcko*, 136 N.H. 480, 485 (1992), the State argues that an adjudicative proceeding is required only when an administrative act affects some private rights as opposed to public rights. We conclude that because the board's decision in this case affected the private rights of individuals employed as SEOs and ICTs, an adjudicative proceeding was required.

One issue in *Appeal of Tozcko* was whether hearings conducted pursuant to the Ski Craft Act should be considered "contested cases" within the meaning of the APA. *Tozcko*, 136 N.H. at 485. The Ski Craft Act, which regulates the operation of watercraft such as "jet skis" or "surf skis," explicitly authorized the department of safety to promulgate procedural rules for conducting public hearings to determine whether to prohibit or restrict the use of ski craft on New Hampshire's ponds, lakes and rivers. *Id.* at 483. We held that the hearings did not have to be conducted pursuant to the APA's provisions governing adjudicatory proceedings because the ski craft hearings affected the public generally, rather than a particular party. *Id.* at 485. We reasoned that because those barred from using a pond or lake range from landowners to occasional visitors, the class of affected parties was fluid and not limited or discernible enough to require adjudication. *Id.* at 486.

In the present case, by contrast, the class of persons affected by the director of personnel's decision regarding classification is limited and discernible. The petitioners are two groups of individuals currently

employed by the State as SEOs and ICTs. The petitioners challenge whether the director has fulfilled her statutory duty of ensuring that the same qualifications are required for, and the same schedule of pay is equitably applied to, all positions within the State classified service. *See* RSA 21-I:57. Thus, the petitioners challenge, among other things, whether they are being properly compensated given their duties and responsibilities. The class of affected parties is limited to those who now hold the ICT and SEO positions or will hold them in the future. Therefore, the administrative action taken in this case is more akin to an adjudication than to a rulemaking, and is a "contested case."

We also disagree with the State's argument that these are not "contested cases" because, unlike RSA 21-I:58, RSA 21-I:57 does not specify that "[t]he appeal shall be heard in accordance with the procedures provided for adjudicative proceedings in RSA 541-A." Were it not for the existence of RSA 541-A:41, we might agree. As we previously noted, RSA 541-A:41 states that the APA "shall govern all agency rulemaking procedures, hearings, and appeals, except as specifically exempted by this chapter." Because this provision was enacted two years after RSA 21-I:57 and :58, it, by its terms, forecloses the conclusion that because section 57 does not specifically refer to adjudicative proceedings of the APA, they do not apply. Having concluded that we shall treat the appeals to the board as "contested cases," we next consider whether the APA required that the board give the petitioners the opportunity to present testimonial evidence at the hearing.

■ No provision of the APA requires an agency to hear live testimony from witnesses in every contested case. *See generally* RSA 541-A:31-:36. The APA simply provides that in an adjudicative proceeding, parties shall be given the opportunity to respond and present evidence and argument. *See* RSA 541-A:31, IV. It also provides that any part of the evidence received "may be received in written form if the interests of the parties will not thereby be prejudiced substantially." RSA 541-A:33, II.

In the context of classification appeals, we understand this to mean that when the credibility of a witness is material to the outcome of the appeal, parties must be given the opportunity to present live witness testimony. Such a rule ensures that the board's role in classification appeals is meaningful, rather than merely ministerial. To determine whether live witness testimony would have been material to the outcome of the appeal in this case, we now consider the nature of the appellant's complaint about the director's action, and how the proposed testimonial evidence might have affected the board's review of that action.

To determine whether to grant the SEO and ICT requests, the director apparently applied the class evaluation plan used to measure the worth of a position state-wide as well as in relation to other positions within the same agency. The classification plan requires that the director consider a number of factors, including knowledge, supervision, working conditions and complexity, and assign points for each factor based upon the duties and responsibilities performed by those employed in the position. On appeal to the board, the petitioners argued that the director should have allocated more points to some of the factors because the petitioners had job duties and responsibilities the director did not take into consideration. According to the petitioners, testimonial evidence was necessary to prove to the board that the petitioners had duties and responsibilities different from, or in addition to, those described by the director. We disagree.

█ The board's decision makes clear that it considered the duties and responsibilities *described by the petitioners* and concluded that it was not persuaded that the petitioners' duties and responsibilities exceed the level at which they are currently evaluated. In particular, the board was not persuaded that the points allocated to supervision, complexity, knowledge, working conditions, and skill for the SEO I positions should be increased. Similarly, the board was unpersuaded that the duties described by the ICTs exceed the distinguishing factors in the current specification or warrant reallocation of the salary grade. Thus, it appears that the board accepted as true the petitioners' representations about the nature of their work, but nevertheless disagreed with them that the point values for individual factors should be increased. Under these circumstances, there were no material facts in dispute and live witness testimony would have served no useful purpose.

The petitioners cite due process cases in support of their argument that the board's refusal to allow live testimony substantially prejudiced them. *See Petition of Bagley*, 128 N.H. 275, 288 (1986); *Petition of Grimm*, 138 N.H. 42, 46-47 (1993).

They do not explicitly argue, however, either below, or on appeal, that they were denied due process; nor do they identify the legally protected interest affected by the agency's action in this case. Therefore, we decline to consider whether the board's decision not to allow live testimony violated the petitioners' due process rights. *See Snow v. American Morgan Horse Assoc.*, 141 N.H 467, 472 (1996) (this court will not review on appeal constitutional issues not presented below); *cf. State v. Laurent*, 144 N.H. 517, 521 (1999) (declining to review vague and undeveloped argument).

While we affirm the board's decision not to permit live witness testimony in these appeals, we agree with the petitioners that the board violated RSA 541-A:35 by failing to provide sufficiently detailed findings of fact and rulings of law in its order. RSA 541-A:35 provides, in pertinent part:

> A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

Thus, when an agency

> structures its decision solely by summarizing evidence presented by the contending parties and describing the parties' opposing views, without making specific factual findings in support of its own conclusions, it fails to meet its statutory obligation to make a concise and explicit statement of the underlying facts supporting [its] findings, and its order will therefore be vacated and remanded for a new hearing.

*Appeal of City of Nashua,* 138 N.H. 261, 263-64 (1994) (quotations and citations omitted). The purpose of this requirement is to provide this court with an adequate basis upon which to review the decision of the administrative agency. *Cf. Appeal of Savage,* 144 N.H. 107, 110 (1999) (noting that while an agency may reconcile conflicting evidence or disbelieve unrefuted evidence, a reviewing court is unable to review intelligently the board's decision unless it provides some illumination for its conclusions).

We conclude from our review of the board's decision denying the SEOs' request for reallocation to a proposed single classification that it does not meet the requirements of RSA 541-A:35. As we noted previously, the board stated in its decision that it had compared the duties and responsibilities described by the SEOs to the current class specifications for Support Enforcement Officer I and concluded that it was "not persuaded that the [SEOs'] duties and responsibilities exceed the level at which they are currently evaluated." To explain how it arrived at this conclusion, the board then stated, in conclusory fashion:

The appellants failed to persuade the board that their positions should be increased to levels 2 or 3 for Supervision, from level 3 to level 4 for Complexity, from level 4 to level 5 for Knowledge, from level 3 to level 4 for Working Conditions, from level 2 to levels 3 or 4 for Skill. The appellants failed to produce evidence sufficient to persuade the Board that their current accountabilities support the requested increase in salary grade. In reaching that decision, the Board compared the salary grade assigned to Support Enforcement Officer I positions to a number of other positions statewide. The Board takes judicial notice that positions of Bank Examiner I, State Police Trooper, Conservation Officer II, Correctional Officer/Case Manager, Child Protective Service Worker and Disability Examiner are allocated at salary grade 17 as well. Given the nature of the duties associated with those positions, and the level of responsibility assigned to them, the Board found that salary grade 17 was appropriate for the positions under appeal.

It is clear that the board failed to identify specific factual findings supporting its conclusion that positions should not be increased to levels 2 or 3 for Supervision, from level 3 to level 4 for Complexity, from level 4 to level 5 for Knowledge, from level 3 to level 4 for Working Conditions, from level 2 to levels 3 or 4 for Skill. The board also failed to make specific findings about the nature of the duties associated with the positions of Bank Examiner I, State Police Trooper, Conservation Officer II, Correctional Officer/Case Manager, Child Protective Service Worker and Disability Examiner so that it could then compare them with the specific duties of the Support Enforcement Officers to support its conclusion that Support Enforcement Officer Is are properly allocated at salary grade 17. Therefore, were we asked to do so, we would be unable to determine whether the board properly concluded that the director's decision to deny the petitioners' reclassification appeals was consistent with her obligation to ensure that the "same qualifications [are] required for, and the same schedule of pay [is] equitably applied to, all positions in the same classification." RSA 21-I:42, II. Under these circumstances, we conclude that the board has failed to provide us with an adequate basis upon which to review its decision, and has therefore failed to satisfy the requirements of RSA 541-A:35. See Appeal of City of Nashua, 138 N.H. at 263-64.

■ Our review of the board's decision denying the ICTs' request for the creation of a new classification of Support Enforcement Technician likewise leads us to conclude that the board's decision was not legally

sufficient. The board reviewed the existing specification for Case Technician I and compared it with the ICTs' proposed specification for a new classification of Support Enforcement Technician. The board then stated:

> Although the Board recognizes that the Case Technicians assigned to the Interstate unit are required to obtain information and conduct collection activities in a multi-jurisdictional setting, the Board does not believe that this factor alone warrants the creation of a new classification of Support Enforcement Technician. After reviewing the evidence offered for the Board's consideration, the Board found that the current specification may not reflect the duties and responsibilities of Case Technicians assigned to the Interstate unit as precisely as those listed in the proposed specification. However, the Board was not persuaded that the duties described by the appellants exceed the distinguishing factors in the current class specification, or that the duties and responsibilities warrant reallocation from salary grades 11, 13 and 15 to salary grade 17.

As with the SEO decision, it is clear that the board accepted as true the factual assertions the petitioners made regarding how their responsibilities had increased, but nevertheless concluded that the duties and responsibilities warranted neither the creation of a new classification of Support Enforcement Technician, nor an upgrading of the positions to salary grade 17. However, as with the SEO appeal decision, the board failed to make specific factual findings supporting its determinations that the duties did not exceed the distinguishing factors in the current class specification and did not warrant reallocation of the salary grades. Again, under these circumstances, we conclude that the board has failed to provide us with an adequate basis upon which to review its decision, and has therefore failed to satisfy the requirements of RSA 541-A:35. *Appeal of City of Nashua*, 138 N.H. at 263-64.

In light of our conclusion that the board's decision failed to comply with the requirements of RSA 541-A:35, we vacate the board's decision and remand the case for proceedings consistent with this opinion. We leave to the board to determine, in the first instance, whether the petitioners should be entitled to retroactive pay and attorney's fees should they prevail on remand.

*Vacated and remanded.*

BRODERICK, NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.